*Li v. Garland*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand twenty-one.

PRESENT:
GERARD E. LYNCH,
SUSAN L. CARNEY,
RICHARD J. SULLIVAN,
*Circuit Judges.*

_____

LIZHONG LI,

  *Petitioner*,

    v.              No. 19-1213

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

  *Respondent.*

_____

FOR PETITIONER:        Troy Nader Moslemi, Esq., Flushing, NY.

FOR RESPONDENT:       Song Park, Senior Litigation Counsel, Office of Immigration Litigation (Joseph H. Hunt, Assistant Attorney General; Leslie McKay, Senior Litigation Counsel,

*on the brief*), United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED.**

Petitioner Lizhong Li, a native and citizen of the People's Republic of China, seeks review of a 2019 decision of the BIA affirming a 2017 decision of an Immigration Judge ("IJ") denying Li's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lizhong Li,* No. A 205 617 935 (B.I.A. Apr. 5, 2019), *aff'g* No. A 205 617 935 (Immig. Ct. N.Y. City Nov. 7, 2017). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as needed to explain our decision to deny the petition for review.

We review the IJ's decision as modified by the BIA, *see Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005), assessing adverse credibility determinations under the substantial evidence standard and upholding the agency's findings of fact unless any reasonable adjudicator would be compelled to find that the agency erred, *see* 8 U.S.C. § 1252(b)(4)(B); *see also Hong Fei Gao v. Sessions*, 891 F.3d 67, 76–77 (2d Cir. 2018).

Li's claims for relief are premised on his allegation that he was persecuted in China for practicing Falun Gong. The IJ determined that Li was not credible, and the BIA affirmed, principally based on its finding of inconsistencies related to when Li discovered he was practicing Falun Gong rather than participating in a non-controversial exercise program.[1] The IJ recounted that Li "had begun practicing Falun Gong in mid-2011," and that Li "testified on direct examination that he did not learn that he had been practicing Falun Gong until he was arrested by the police in January 2012." Certified Administrative Record ("CAR") at 58. The IJ found the timeline in Li's direct testimony to be inconsistent

---

[1] The IJ also based its adverse credibility determination on an inconsistency between Li's testimony as to the date that he decided to leave China and the sworn statement by Li's cousin as to the date that Li told him that Li had decided to leave China. The BIA disclaimed reliance on this discrepancy, however. We therefore do not rely on it when evaluating the IJ's adverse credibility determination. *See Yang*, 426 F.3d at 522.

with the narrative presented in his written statement and in a letter submitted by his Falun Gong teacher, Master Gongxu Li. The IJ further found that this discrepancy went "directly to the heart of the respondent's claim." CAR at 59. On review, the BIA held that the IJ's inconsistency determination was supported by the record and that the discrepancy "brings the respondent's account into question." CAR at 3.

Li first asserts that the statements identified and relied on by the IJ were not necessarily inconsistent. Li's written statement set forth that Li "practiced for several months" with Gongxu Li, and that sometime "[l]ater on" Gongxu Li told him that the exercise was Falun Gong. CAR at 195 (Ex. 2A). Similarly, Gongxu Li's letter states that he told Li the exercise regime they were practicing was Falun Gong "[a]fter he told me his physical conditions became better." CAR at 251 (Ex. 3H). Li maintains that neither of these statements is inconsistent with Li's direct testimony, as summarized by the IJ, that he "did not learn that he had been practicing Falun Gong until he was arrested by the police in January 2012," CAR at 58, because the arrest occurred after Li had been practicing for several months and after Li's health had begun to improve.

Taken in isolation, the statements could be seen as not directly contradictory. Taken together, however, in the full context of the written statements and Li's testimony, we cannot conclude that the agency's view is clearly erroneous. Both Li and Gongxu Li's written statements are generally presented sequentially, without specifics as to the timing of their occurrence: Li practiced with his master for several months, learned that he had been practicing Falun Gong, and was arrested. A reasonable fact finder could conclude that the sequential presentation reflects a chronology that is in its essentials at odds with Li's direct testimony that he did not know he was practicing Falun Gong until after he was arrested. Moreover, Li recounts in his written statement that when he was interrogated by the police in connection with his arrest, he answered questions about his Falun Gong practice, but it does not suggest that he first learned he was practicing Falun Gong during that arrest or that he was in any way surprised by the police officers' questions concerning his practice of Falun Gong. The police raid and the arrest of Li and the other practitioners were a salient event, and if Li did not know that he had unknowingly been practicing Falun Gong until just at the

3

time of or directly after that event, a reasonable fact finder could conclude that it would not be reasonable or consistent to report the time that he learned the nature of the exercises more vaguely as after his health improved, or sometime "later on," after he had begun the exercises.

Examining the context provided by Li in his direct testimony heightens rather than dispels or explains the tension in the accounts. At times during his testimony, Li represented that he did not learn he was practicing Falun Gong during the approximately six-month period before he was arrested in January 2012. At other times, however, Li stated that he found out from Gongxu Li "[i]n the four-month period when we were practicing." CAR at 101–2. In response to questions from the IJ about when Li first discovered he was practicing Falun Gong, Li stated that in "the first four months I think [Gongxu Li] did mention something. But we weren't really paying attention, we weren't really sure, so we weren't paying attention." CAR at 137. The IJ followed up, asking, "So, sometime in the first four months he did tell you it was Falun Gong?" *Id.* Li responded "Yes. We didn't really pay attention." *Id.*

Under the totality of the circumstances, we cannot conclude that "it is plain that no reasonable fact-finder could make such an adverse credibility ruling," and so we affirm the agency's adverse credibility determination. *Liang v. Garland*, 10 F.4th 106, 111 (2d Cir. 2021) (internal quotation marks omitted). Because Li's three claims for relief rest on the same factual predicate, our conclusion is dispositive of his petition for asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

* * *

We have considered Li's remaining arguments and find in them no basis for disturbing the agency's decision. Accordingly, the petition for review is **DENIED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

4